UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

ANTHONY RUSSO,

    Plaintiff,

v.

                                   CASE NO.:

CAPITAL ONE BANK, (USA), N.A.,

    Defendant.

_____/

## COMPLAINT

1.    Unwanted "Robocalls" are the #1 consumer complaint in America today. Americans received 3.0 billion robocalls just last month. That is 95.4 million calls per day and 4 million calls per hour.[1]

2.    The people complaining about harassing robocalls is increasing at an alarming rate.

3.    Capital One Bank (USA), N.A. ("Capital One") robocalled the Plaintiff at least, if not more than, 200 times.

4.    "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank*, F.S.B., 746 F. 3d 1242, 1256 (11th Cir. 2014). Despite the penalties put in place over 26 years ago, robocall abuse continues to skyrocket.

---

[1] http://Robocallindex.com

5. Plaintiff, Anthony Russo, alleges Defendant, Capital One robocalled him more than 200 times in stark violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), the Fair Debt Collection Practices Act, the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq.* ("FCCPA"), and Invasion of Privacy ("IOP).

6. Robocalls are very inexpensive to make. As was noted in a Senate hearing on the subject: "With such a cheap and scalable business model, bad actors can blast literally tens of millions of illegal robocalls over the course of a single day at less than 1 cent per minute." *Stopping Fraudulent Robocall Scams: Can More Be Done?: Hearing Before the Subcomm. on Consumer Prot., Prod. Safety, and Ins. of the S. Comm. on Commerce, Sci., and Transp.*, 113 Cong. 113-117 (2013) (statement of Lois Greisman, Assoc. Director, Division of Marketing Practices, Bureau of Consumer Protection, Federal Trade Commission).

7. The TCPA was enacted to prevent companies like Capital One from invading American citizens' privacy and prevent illegal robocalls.

8. Congress enacted the TCPA to prevent real harm. Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227; see also *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012) ("The Act bans certain practices invasive of privacy").

9. According to findings by the FCC—the agency Congress vested with authority to issue regulations implementing the TCPA—such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that

2

wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

10. This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. *Krakauer v. Dish Network, L.L.C.* No. 18-1518, 2019 WL 2292196 at *2 (4th Cir. May 30, 2019).

## JURISDICTION AND VENUE

11. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. §1331.

12. Violations described in the Complaint occurred while Plaintiff was in Coral Springs, Florida.

## FACTUAL ALLEGATIONS

13. Plaintiff is a natural person and citizen of the State of Florida, residing in Coral Springs, Florida.

14. Plaintiff is a "consumer" as defined in Florida Statute § 559.55(8) 15 U.S.C.

15. Plaintiff is an "alleged debtor."

16. Plaintiff is the "called party." *See Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014); *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

17. Defendant is a corporation with its principal place of business in Virginia, and conducts business in the State of Florida.

18. Defendant is a "debt collector" as defined by Florida Statute § 559.55(7).

19. The debt that is the subject matter of this complaint is a "consumer debt" as defined by Florida Statute § 559.55(6).

20. Plaintiff is the regular user and carrier of the cellular telephone number (954) 573-5762 and home number (954) 753-5650.

21. Plaintiff was the "called party" during each phone call subject to this lawsuit.

22. Defendant intentionally harassed Plaintiff on numerous occasions by calling several times during one day.

23. Defendant called several days in a row on both his cellular phone and home phone, with such frequency as can reasonably be expected to harass and abuse the Plaintiff.

24. Defendant deliberately called both his cellular phone and home phone in the same time frame so Plaintiff had no escape from the calls.

25. Defendant was able to reach Plaintiff who explained the reason for late payment so Defendant had no legitimate purpose to continue the calls at such a high volume and pace other than to harass him.

26. It is the Defendant's burden to prove they had "express consent" per the TCPA to call the Plaintiff on his cell phone using an "automatic telephone dialing system" (ATDS).

27. It is the Defendant's burden to prove they had "express consent" per the TCPA to call the Plaintiff on his cell phone using an ATDS for each account they were calling on.

28. Defendant was told by Plaintiff that he did not want the Defendant contacting him.

29. Defendant was told repeatedly that Plaintiff wanted the calls to stop, but the calls continued, disregarding every request Plaintiff made asking for the calls to stop.[2]

---

[2] Defendant should have the call logs showing the exact number of calls and the recordings which should illustrate exactly what was said to the Defendant.

30. Plaintiff revoked any express consent Defendant may have mistakenly believed it had for placement of telephone calls to Plaintiff's cellular telephone by the use of an ATDS or a pre-recorded or artificial voice.

31. Defendant attempted to collect a debt from the Plaintiff by this campaign of telephone calls.

32. Defendant made at least one call to (954) 573-5762.

33. Defendant made at least one call to (964) 573-5762 using an ATDS.

34. Defendant made at least one call to (954) 753-5650.

35. Defendant made at least two hundred (200) calls to (954) 573-5762.

36. Defendant made at least two hundred (200) calls to (954) 573-5762 using an ATDS.

37. Defendant made at least two hundred (200) calls to (954) 753-5650.

38. Each call the Defendant made to (954) 573-5762 in the last four years was made using an ATDS, which has the capacity to store or produce telephone numbers to be called, without human intervention, using a random or sequential number generator; and to dial such numbers as specified by 47 U.S.C § 227(a)(1).

39. The calls at issue were placed by the Defendant using a "prerecorded voice," as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

40. Plaintiff repeatedly requested the Defendant to stop calling his cell phone, however, the Defendant continued to make calls.

41. Plaintiff's conversations with the Defendant putting them on notice that he did not want more phone calls were ignored.

42. Plaintiff advised the Defendant to stop calling by certified letter but the calls continued nonetheless.

43. Defendant has recorded at least one conversation with the Plaintiff.

44. Defendant has recorded numerous conversations with the Plaintiff.

45. Defendant has made approximately two hundred (200) calls to Plaintiff's cellular telephone number and home phone in the past four (4) years which will be established exactly once Defendant turns over their dialer records.

46. Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of abusive robocalls.

47. Defendant has been sued in federal court where the allegations include: calling an individual using an ATDS after the individual asked for the calls to stop.

48. By effectuating these unlawful phone calls, Defendant has caused Plaintiff the very harm that Congress sought to prevent—namely, a "nuisance and invasion of privacy."

49. Defendant's aggravating and annoying phone calls trespassed upon and interfered with Plaintiff's rights and interests in his cellular telephone and cellular telephone line, by intruding upon Plaintiff's seclusion.

50. Defendant's phone calls harmed Plaintiff by wasting his time.

51. Moreover, "wireless customers [like Plaintiff] are charged for incoming calls whether they pay in advance or after the minutes are used."  In re: *Rules Implementing the TCPA of 1991*, 23 FCC Rcd 559, 562 (2007).

52. Defendant's phone calls harmed Plaintiff by depleting the battery life on his cellular telephone, and by using minutes allocated to Plaintiff by his cellular telephone service provider.

53. Defendant's corporate policy and procedures are structured as to continue to call individuals like the Plaintiff, despite these individuals revoking any consent the Defendant may have mistakenly believed it had.

54. Defendant's corporate policy and procedures provided no means for the Plaintiff to have his cellular number removed from the call list.

55. Defendant has a corporate policy of using an ATDS or a prerecorded or artificial voice message to collect debts from individuals such as Plaintiff for its financial benefit.

56. In the last 3 years, the Defendant has had 6,702 complaints reported to the Better Business Bureau (BBB), of which 3,201 of those complaints are classified as being related to "Billing/Collection Issues." (See bbb.org)

57. Making money while breaking the law is considered an incentive to continue violating the TCPA and other state and federal statutes.

58. None of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

59. Defendant violated the TCPA and FCCPA with respect to the Plaintiff.

60. Defendant willfully or knowingly violated the TCPA with respect to the Plaintiff.

## COUNT I
### (Violation of the TCPA)

61. Plaintiff incorporates Paragraphs one (1) through sixty (60).

62. Defendant willfully violated the TCPA with respect to the Plaintiff each time they called the Plaintiff after he revoked his consent to be called by them using an ATDS or pre-recorded voice.

63. Defendant knowingly violated the TCPA with respect to the Plaintiff, especially for each of the auto-dialed calls made to Plaintiff's cellular telephone after Plaintiff revoked his consent to be called by them using an ATDS or pre-recorded voice.

64. Defendant, Capital One Bank (USA), N.A. repeatedly placed non-emergency telephone calls to the wireless telephone number of Plaintiff using an automatic telephone dialing

system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

65. As a result of Defendant's illegal conduct, Plaintiff suffered actual damages and, under § 227(b)(3)(B), is entitled to, inter alia, a minimum of $500.00 in damages for each such violation of the TCPA.

66. Plaintiff is also entitled to, and does, seek injunctive relief prohibiting Defendant, Capital One Bank (USA), N.A., from violating the TCPA in the future.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

## COUNT II
**(Violation of the FCCPA)**

67. Plaintiff incorporates Paragraphs one (1) through sixty (60).

68. At all times relevant to this action Defendant is subject to and must abide by the law of Florida, including Florida Statute § 559.72.

69. Defendant has violated Florida Statute § 559.72(7) by willfully communicating with the debtor or any member of his family with such frequency as can reasonably be expected to harass the debtor or his family.

70. Defendant has violated Florida Statute § 559.72(7) by willfully engaging in other conduct which can reasonably be expected to abuse or harass the debtor or any member of his family.

71. Defendant has violated Florida Statute § 559.72(9) by attempting to enforce a debt when Defendant knows that the debt is not legitimate or assert the existence of some legal right when Defendant knows that right does not exist.

72. Defendant's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute §559.77.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder of future illegal conduct, and any other such relief the court may deem just and proper.

## COUNT III
### (Invasion of Privacy – Intrusion Upon Seclusion)

73. Plaintiff incorporates Paragraphs one (1) through sixty (60).

74. Defendant through its collection conduct, has repeatedly and intentionally invaded Plaintiff's privacy.

75. All of the calls made to Plaintiff's cell phone by Defendant and its agents using an automatic telephone dialing system were made in violation of the TCPA, and were unreasonable and highly offensive invasions of Plaintiff's right to privacy.

76. Defendant's persistent autodialed calls to both his cellular phone and home telephone eliminated Plaintiff's right to be left alone.

77. Defendant's autodialed collection calls disrupted Plaintiff's privacy, disrupted Plaintiff's sleep, disrupted Plaintiff during mealtimes, and continually frustrated and annoyed Plaintiff.

78. These persistent autodialed collection calls eliminated the peace and solitude that he would have otherwise had in Plaintiff's home and anywhere else Plaintiff went with his cellular phone.

79. By calling both his home phone and cellular phone, Plaintiff had no escape from these collection calls either in his home or when he left the home.

80. By persistently autodialing Plaintiff's cellular phone without prior express consent, Defendant invaded Plaintiff's right to privacy, as legally protected by the TCPA, and caused Plaintiff to suffer concrete and particularized harm.

81. Defendant's harassing collection conduct and tactic of repeatedly auto dialing Plaintiff to both his cellular and home telephone after requests to stop is highly offensive to a reasonable person.

82. Defendant intentionally intruded upon Plaintiff's solitude and seclusion.

83. As a result of Defendant's action or inaction, Plaintiff has been damaged.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

Respectfully submitted,

<u>Heather H. Jones, Esq.</u>
Heather H. Jones, Esq.
Florida Bar No. 0118974
William "Billy" Peerce Howard, Esq.
Florida Bar No. 0103330
The Consumer Protection Firm, PLLC
4030 Henderson Boulevard
Tampa, FL 33629
Telephone: (813) 500-1500, ext. 205
Facsimile: (813) 435-2369
Heather@TheConsumerProtectionFirm.com
Billy@TheConsumerProtectionFirm.com
*Attorney for Plaintiff*